PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA J. GADD, *et al.*, | ) | |
| | ) | CASE NO. 4:13cv1686 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CITY OF WARREN, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 26] |

Pending before the Court is a Motion for Summary Judgment filed by Defendants City of

Warren, Warren City Counsel, and Councilmen Bob Dean, Eddie Colbert, and Vincent Flask.

ECF No. 26.  The Court has been advised, having reviewed the record, including the parties'

briefs and the applicable law.  For the reasons provided below, the Court hereby grants

Defendants' Motion for Summary Judgment.

**I.  Factual and Procedural Background**

In 1995, Plaintiff Linda Gadd, along with her husband Richard, purchased the Olympic

Inn, a bar in the city of Warren.  ECF No. 35 at 14.  Gadd and her husband had operated the

bar—renamed Gadd's Olympic Inn—until Richard passed away in 2009.  ECF No. 35 at 22.

Gadd continued to operate the bar following her husband's death.  ECF No. 35 at 23.  By 2011,

however, Gadd began to consider selling Gadd's Olympic Inn because of the hours and the bar's

location.  ECF No. 35 at 24–25.  The demographics of the neighborhood surrounding the bar had

changed from 2009 to 2011.  Gadd testified that she heard gun shots, fights and other loud noises

emanating from the Olympic Inn's parking lot at night.  ECF No. 35 at 25–27.  A local gang also

(4:13cv1686)

robbed a customer and the bar in 2011. ECF No. 35 at 57–58. During the first seven months of 2012, the Warren Police reported being called to the premises of Gadd's Olympic Inn twenty-seven (27) times to break up fights and investigate gunshots heard in the area. ECF No. 26-6 at 2. On numerous occasions, police found weapons and spent shell casings in the bar's parking lot. ECF No. 26-6 at 2.

On the night of August 4, 2012, Anthony Price, Sr. got into a fight with a patron of the Olympic Inn. ECF No. 35 at 53. After Price left the bar, someone shot at him while he was in the Olympic Inn's parking lot. ECF No. 26-3 ¶ 4. In response, Price retrieved the gun he kept in his car to defend himself. ECF No. 26-3 ¶ 5. Price started shooting across the Olympic Inn's parking lot in different directions in an attempt to scare off his attacker. ECF No. 26-3 ¶ 6. In the process of defending himself, Price shot a resident of the neighborhood. ECF No. 26-6 at 2. Pamela Dial had been asleep in her home when the bullet fired by Price went through her walls and struck her in the head. ECF No. 26-6 at 2. Gadd closed the Olympic Inn shortly thereafter. ECF No. 35 at 49.

On August 8, 2012, Warren City Council issued a notice for a Special Meeting to be held on August 13, 2012 for the purpose of voting to object to the renewal of Gadd's Olympic Inn's liquor license. ECF No. 26-4 at 2. The notice of special meeting was provided to local media by the Clerk of Warren City Council. ECF No. 26-4 at 1. At some point between the shooting and August 10, 2012 Gadd testified that she learned, through her daughter, that City Council had been considering taking away the bar's license, but that Defendant Vince Flask wanted to meet with Gadd to try to "resolve some of the issues." ECF No. 35 at 64. It was agreed that Gadd

(4:13cv1686)

would meet with Flask at a Panera restaurant in Warren on August 10, 2012.  ECF No. 35 at 61.

Gadd asked her sister Loretta and family friend John Homilitas to attend the meeting at Panera

with her.  ECF No. 35 at 72.

The parties dispute what occurred during the August 10th meeting at Panera.  Gadd

maintains that Defendant Eddie Colbert arrived at the meeting late; and told Gadd that the City

Council had already decided to object to her license renewal and that Gadd should not attend the

Special Council meeting.  ECF No. 35 at 72.  Gadd further testified that Colbert swore at her

during the meeting, and was unmoved by Gadd's requests to work out the problems with the bar

so as to not interfere with a sale Gadd believed she had arranged.[1]  ECF No. 35 at 73–74.

Homilitas recalled Colbert saying something about guaranteeing Gadd's Olympic Inn would not

reopen, but did not remember any person at Panera discussing Gadd's liquor license or that a

vote had already occurred.  ECF No. 34 at 8–9.  Colbert denies making any of these comments.

According to Colbert, he stated that no decisions would be made prior to the Special Meeting.

ECF No. 33 at 21.  Colbert also testified that he was surprised that, during the meeting at Panera,

Gadd had denied that the Olympic Inn had problems with crime and violence.  ECF No. 33 at 22.

Gadd attended the Special Meeting.  She testified that Defendant Bob Dean (through a

mutual acquaintance) had encouraged her to attend the meeting.  ECF No. 35 at 82.  Gadd

---

[1]  Gadd testified that, around May 2012, an unidentified individual approached her about
the possibility of buying Gadd's Olympic Inn.  ECF No. 35 at 35.  Gadd testified that she and
this person had two or three conversations in person about the possibility of purchasing the bar.
ECF No. 35 at 36–37.  Gadd admits, however, that the two sides had not formalized anything in
writing because the unidentified person needed to obtain financing.  ECF No. 35 at 37.  After the
shooting, the unidentified person wrote to Gadd to inform her that he was no longer interested in
the bar because of the negative publicity the shooting had caused.  ECF No. 35 at 38.

(4:13cv1686)

arrived after the meeting had started.  ECF No. 35 at 91.  Consequently, she did not sign up to speak at the beginning of the meeting—an opportunity afforded to all Warren residents.  ECF No. 33 at 34.  Gadd testified that she lost the vote and left after she saw Defendant Dean signal her to leave.  ECF No. 35 at 92.  Colbert testified that he witnessed Gadd arrive late to the meeting and that she had left before council voted to object to her license.  ECF No. 33 at 34.  City Council unanimously passed the resolution to object to the renewal of a liquor license for Gadd's Olympic Inn.  ECF No. 26-4 at 4.

The Council's resolution did not revoke Gadd's liquor license.  Rather, the objection to renewal was submitted to the Ohio Division of Liquor Control pursuant to R.C. § 4303.292.  The Division of Liquor Control held a hearing to evaluate whether the Division would renew Gadd's liquor license.  ECF No. 26-6 at 1.  Gadd testified at this hearing, and had the opportunity to present evidence from other witnesses.  ECF No. 35 at 101.  The Division rejected Gadd's request for renewal of her liquor license.  The report issued by the Division indicates that it based its conclusion on the testimony presented at the hearing as well as an independent investigation.  ECF No. 26-6 at 1.  Specifically, the Division found that Gadd's Olympic Inn had been connected to several violent events escalating in seriousness during 2012.  ECF No. 26-6 at 2.  The Division also considered evidence presented by the Warren City Police about the frequency of gun related activity in the area surrounding the bar.  ECF No. 26-6 at 2.

Gadd exercised her right to appeal the Division's decision to the Liquor Control Commission.  ECF No. 26-7.  The Liquor Control Commission also conducted a hearing, during which Gadd testified and had the opportunity to present other evidence.  ECF No. 35 at 101.

4

(4:13cv1686)

The Liquor Control Commission affirmed the decision of the Division of Liquor Control.  ECF

No. 26-8.  Gadd then appealed this decision to the Franklin County Court of Common Pleas.

ECF No. 26-9.  The Court of Common Pleas affirmed the decision not to renew Gadd's liquor

license, finding that ample evidence supported the Commission's denial of Gadd's liquor license

ECF No. 26-10.  Specifically, the Court of Common Pleas noted that numerous witnesses

complained of the violence of the area surrounding Gadd's Olympic Inn, and that these incidents

continued despite numerous attempts taken by Gadd to curb the violence.  ECF No. 26-10 at 5.

The Court found this testimony was "reliable, probative, and substantial evidence supporting that

the operation of Olympic Inn bar not only threatened public safety and the safety of the

responding officers, but placed a drain on the resources of the Warren Police Department."  ECF

No. 26-10 at 5–6.

        Gadd filed this instant lawsuit on August 2, 2013, alleging eight causes of action.  ECF

No. 1.  Gadd's Complaint alleges that she was deprived of her constitutional right to procedural

due process when her license was not renewed.  The Complaint also alleges numerous state law

claims, including violation of sunshine laws, tortious interference with contract and business

relationship, defamation, intentional and negligent infliction of emotional distress, civil

conspiracy, and slander of title.  Defendants moved for summary judgment on all of Gadd's

claims.  ECF No. 26.  Gadd opposed the motion (ECF No. 36); Defendants replied.  ECF No. 39.

The matter is ripe for adjudication.

## II.  Legal Standard

        Summary judgment is appropriately granted when the pleadings, the discovery and

(4:13cv1686)

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be

6

(4:13cv1686)

no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Id.*

### III.  Discussion

Defendants raise numerous defenses in support of their motion for summary judgment. First, Defendants argue that all of Gadd's claims are barred by the *Rooker-Feldman* doctrine. ECF No. 26-1 at 7. Alternatively, Defendants argue that Gadd's claims are barred by the doctrine of *res judicata*. ECF No. 26-1 at 9. Defendants also raise various immunity defenses under both federal and state law. ECF No. 26-1 at 25–31. Defendants also contend that Gadd has not stated any viable claim. Specifically, Defendants argue that Gadd has not been deprived of any constitutional right in the instant case. ECF No. 26-1 at 15. Defendants also argue that Gadd cannot establish elements in each of her state law claims. ECF No. 26-1 at 31–38.

At the outset, the Court grants summary judgment as to all claims against Defendant Warren City Council. "A city council is not *sui juris* and therefore cannot sue or be sued in its own right, absent statutory authority." *City of Cuyahoga Falls v. Robart* (1991), 58 Ohio St.3d

(4:13cv1686)

1, 6, 567 N.E.2d 987.  "An action involving the council should be brought against the city, or

against the existing councilmen." *State ex rel. Cleveland Municipal Court v. Cleveland City*

*Council* (1973), 34 Ohio St.2d 120, 122, 296 N.E.2d 544.  Gadd has sued both.  *See* ECF No. 1

¶¶ 16–17.  Accordingly, the Court dismisses the claims asserted against Warren City Council.

**A.** ***Rooker-Feldman***

The *Rooker-Feldman* doctrine arose from Supreme Court decisions interpreting 28

U.S.C. § 1257(a).  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983);

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  Section 1257(a) provides that "[f]inal

judgments or decrees rendered by the highest court of a State in which a decision could be had,

may be reviewed by the Supreme Court by writ of certiorari . . . ."  28 U.S.C. § 1257(a).

"Because § 1257(a) limits review of final judgments or decrees by the highest court of the State

to certiorari review by the United States Supreme Court, the *Rooker-Feldman* doctrine, by

negative inference, precludes such review by lower federal courts."  *Embassy Realty*

*Investments, LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 572 (N.D. Ohio 2012) (citing

*Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 606 F.3d 301, 308 (6th Cir.

2010)).

The application of the *Rooker-Feldman* doctrine is limited.  *See Coles v. Granville*, 448

F.3d 853, 857 (6th Cir. 2006).  As the Supreme Court explained, *Rooker-Feldman* applies to

"cases brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

(4:13cv1686)

284 (2005). Post-*Exxon*, the Sixth Circuit has applied the "source of the injury" test to determine

whether the *Rooker-Feldman* doctrine applies:

> The inquiry then is the source of the injury the plaintiff alleges in the federal
> complaint. If the source of the injury is the state court decision, then the *Rooker-
> Feldman* doctrine would prevent the district court from asserting jurisdiction. If
> there is some other source of injury, such as a third party's actions, then the
> plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

The Sixth Circuit has declined to apply *Rooker-Feldman* in cases in which the plaintiff

alleges wrongdoing separate and independent from the state court proceeding, even when that

conduct eventually leads to the state court decision. In *Pittman v. Cuyahoga Cnty. Dep't of

Children and Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007), the Sixth Circuit reversed

the district court's decision granting summary judgment on the basis of *Rooker-Feldman*. The

plaintiff in *Pittman* alleged that his due process rights were violated when the defendants refused

to recommend that Plaintiff receive custody of his child. The court concluded that the juvenile

court's decision was not the source of Plaintiff's injury, noting that "Defendants' evaluation of

whether a child can be placed with his parents is independent from the juvenile court's decision

to award custody." *Id.* The Sixth Circuit also reversed summary judgment in *Kovacic* when the

plaintiffs' claims "d[id] not seek review or reversal of the decision of the juvenile court to award

temporary custody to the state," but rather challenged "the conduct of Family Services and of the

social workers that led up to the juvenile courts decision to award temporary custody to the

County." *Kovacic*, 606 F.3d at 310.

The source of Gadd's injury is the alleged conduct of Defendants, not the process by

(4:13cv1686)

which the Division of Liquor Control declined to renew Gadd's liquor license. Defendants'

objection to renewing a liquor license is independent from the Division of Liquor Control's

decision about whether to renew the license. *Compare* R.C. § 4303.271(B) ("The legislative

authority of the municipal corporation, the board of township trustees, or the board of county

commissioners of the county in which a permit premises is located may object to the renewal of

a [liquor license] for any of the reasons contained in division (A) of section 4303.292 of the

Revised Code."), *with* R.C. § 4303.292 ("The division of liquor control may refuse to issue,

transfer the ownership of, or renew, and shall refuse to transfer the location of, any retail permit

issued under this chapter if it finds either of the following . . . ."). Defendants acknowledge that

the objection and revocation are distinct events. ECF No. 39 at 8. Gadd seeks compensatory

and punitive damages for Defendants' conduct prior to the Division's revocation hearing and her

subsequent appeal. ECF No. 1 at 14–15. Gadd does not request that the Court reverse the

decision made by the Court of Common Pleas, or otherwise seek to regain her liquor license.

The injury for which Plaintiff seeks redress results from Defendants' alleged conduct prior to

and independent of any state court judgment. *Rooker-Feldman*, therefore, does not bar

Plaintiff's Complaint.

###   B. *Res Judicata*

Defendants also contend that the doctrine of *res judicata* bars Gadd's entire Complaint.

ECF No. 26-1 at 15. "If a federal plaintiff present[s] some independent claim, albeit one that

denies a legal conclusion that a state court has reached in a case to which he was a party . . . ,

then there is jurisdiction and state law determines whether the defendant prevails under

10

(4:13cv1686)

principles of preclusion." *Exxon*, 544 U.S. at 293. Ohio's doctrine of *res judicata* encompasses both claim preclusion and issue preclusion. *Grava v. Parkman Twp.* (1995), 73 Ohio St. 3d 379, 381, 653 N.E.2d 226, 228. Both claim and issue preclusion apply to quasi-judicial administrative proceedings. *Girard v. Trumbull Cnty. Budget Comm.* (1994), 70 Ohio St.3d 187, 193, 638 N.E.2d 67, 72.

"Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of the previous action." *O'Nesti v. DeBartolo Realty Corp.* (2007), 113 Ohio St. 3d 59, 61, 862 N.E.2d 803, 806. "For purposes of res judicata analysis, a 'transaction' is defined as a 'common nucleus of operative facts.'" *U.S. Bank Natl. Assn. v. Gullotta* (2008), 120 Ohio St. 3d 399, 403, 899 N.E.2d 987, 991 (quoting *Grava*, 73 Ohio St. 3d at 382). "The previous action is conclusive for all claims that were or that could have been litigated in the first action." *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.* (2009), 121 Ohio St. 3d 526, 530, 905 N.E.2d 1210, 1215–16; *see also Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713, 716. In order to find claim preclusion, there must be (1) a prior valid judgment on the merits, (2) involving the same parties, or parties in privity to the prior parties, (3) the present action raises claims that were or could have been litigated in the prior action, and (4) both actions arose out of the same transaction or occurrence. *Daniel v. Williams*, 10th Dist. No. 13AP-155, 2014-Ohio-273, ¶ 18.

Issue preclusion bars re-litigation of any fact or point that was actually and directly in controversy in a previous action before a court of competent jurisdiction. *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140,

11

(4:13cv1686)

144. This is true even when the subsequent suit involves causes of action distinct from those raised in the previous suit. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 254 N.E.2d 10, 13, *overruled on other grounds*, *Grava*, 73 Ohio St. 3d at 379 (syllabus). Ohio courts apply issue preclusion when (1) the fact or issue was actually and directly litigated in the prior action, (2) was determined by a court of competent jurisdiction, and (3) when the party against whom issue preclusion is asserted was either a party or in privity with a party to the prior action. *Thompson v. Wing* (1994), 70 Ohio St. 3d 176, 183, 637 N.E.2d 917, 923.

Neither claim nor issue preclusion apply to Gadd's lawsuit. There is not a common nucleus of operative facts shared by the present lawsuit and the liquor license revocation procedure and subsequent appeal. The operative facts for the state adjudicated matters are that: Defendants objected to Gadd's liquor license, the Division of Liquor Control declined to renew the license, and the denial was affirmed by the Liquor Control Commission and the Franklin County Court of Common Pleas. In contrast, the operative facts supporting the claims in Gadd's Complaint relate to actions taken by Defendants prior to Gadd losing her liquor license. It is not clear that Gadd could have litigated her present federal claims during the liquor license procedure. Gadd's liquor license hearing and appeal was confined to the specific issue of whether cause existed under R.C. § 4303.292 to decline renewal of Gadd's liquor license. The claims presented by Gadd in this federal lawsuit are beyond the limited review of the Division of Liquor Control or the Liquor Control Commission. *See* R.C. § 4301.10(A)(2) (authorizing the Division of Liquor Control to "grant or refuse permits . . . as authorized or required by this chapter and Chapter 4303"); *see also* R.C. § 4301.04 (empowering the Liquor Control

12

(4:13cv1686)

Commission "[t]o consider, hear, and determine all appeals . . . to be taken from any decision, determination, or order of the division of liquor control, and all complaints for the *revocation of permits*") (emphasis added).

Finally, Defendants do not identify facts or issues for which they seek to assert issue preclusion,  and, the Court's review of the record has not revealed any.  Therefore, issue preclusion is inapplicable because the state proceedings did not directly litigate a disputed fact or issue that Gadd is attempting to re-litigate in this federal lawsuit.

**C.  Gadd's Procedural Due Process Claim**

Defendants have moved for summary judgment on Gadd's procedural due process claim. The City of Warren argues that Gadd has failed to state an actionable § 1983 claim against the municipality because Gadd has not shown that a city policy or custom caused her alleged constitutional deprivation.  ECF No. 26-1 at 18.  Defendants Colbert, Dean, and Flask have raised qualified immunity as a defense to Gadd's § 1983 claim.  ECF No. 26-1 at 25.  In the alternative, all Defendants assert that Gadd has not suffered a deprivation of her right to procedural due process.  ECF No. 26-1 at 21.

A plaintiff may not hold a municipality liable under § 1983 based on a theory of *respondeat superior.  Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (holding that § 1983 municipality liability attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").  A single decision made by an official with decisionmaking authority may satisfy the policy or custom requirement of *Monell* if the official

13

(4:13cv1686)

"possesses final authority to establish municipal policy with respect to the action ordered."  *See*

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986).  At the same time, Plaintiff must

also show that the municipality was the "moving force" behind the alleged constitutional injury.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  "That is, a

plaintiff must show that the municipal action was taken with the requisite degree of culpability

and must demonstrate a direct causal link between the municipal action and the deprivation of

federal rights."  *Id.*; *see also* *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004)

("A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that

his civil rights have been violated as a direct result of that municipality's policy or custom.").

 *Brown*'s "moving force" requirement establishes the municipality's culpability for the

alleged constitutional injury.  As the Supreme Court observed, "resolving these issues of fault

and causation is straightforward" when "a particular municipal action *itself* violates federal law."

*Brown*, 520 U.S. at 404 (emphasis in original).  The *Brown* Court noted that municipal liability

will be found when, for example, "a municipality's legislative body or authorized decisionmaker

has intentionally deprived a plaintiff of a federally protected right" or when "the action taken or

directed by the municipality or its authorized decisionmaker itself violates federal law."  *Id.* at

405.

 The Warren City Council is the City's legislative body.  The Warren City Council and its

members are authorized by R.C. § 4303.271 to object to the renewal of liquor licenses held by

Warren businesses.  ECF No. 39 at 8.  Gadd's § 1983 claim results from the Council's decision

to object the renewal of her liquor license.  ECF No. 36 at 12.  If that decision were found to be a

14

(4:13cv1686)

violation of Gadd's procedural due process rights, the City of Warren could be held liable for the allegedly unconstitutional decision made by its legislative body.  Against that backdrop, the Court turns to whether Defendants Colbert, Dean, and Flask—the members of Warren City Council—acted in a way that deprived Gadd of her right to procedural due process.

Defendants Colbert, Dean, and Flask have raised the defense of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "is an *immunity from suit* rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985) (emphasis in original).  Consequently, qualified immunity is a question of law that the court must resolve prior to trial.  *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988).  The burden is on the plaintiff to show that defendants acting within the scope of their authority are not entitled to qualified immunity.  *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *see also Kijowski v. City of Niles*, 372 F. App'x 595, 598 (6th Cir. 2010).

In order to defeat qualified immunity, a plaintiff must demonstrate two things.  First, the plaintiff must show that the defendant's conduct violated a constitutional right.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). Second, the plaintiff must establish that the constitutional right was "clearly established" at the time of the defendant's actions.  *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).  In order

15

(4:13cv1686)

to determine whether the right which the official allegedly violated is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A court may analyze either prong of the qualified immunity analysis first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Lucas*, 753 F.3d at 615.

Gadd has alleged that Defendants violated her right to due process under the Fourteenth Amendment. A state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "[T]he Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). To successfully establish a procedural due process claim, a plaintiff must demonstrate that: (1) she has a life, liberty, or property interest protected by the Due Process Clause, (2) she was deprived of this protected interest within the meaning of the Due Process Clause, and (3) the state did not afford the plaintiff with adequate procedural rights prior to depriving her of the protected interest. *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990); *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "Property interests are not created by the Constitution, instead they are created and defined by independent sources such as state law." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir. 2013) (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Not every benefit conferred by the state is a constitutionally cognizable property interest. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. She

16

(4:13cv1686)

must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Roth*, 408 U.S. at 577).

Gadd has presented case law that stands for the proposition that, under Ohio law, the holder of a liquor license has a constitutionally-protected property interest in that license. *Brookpark Entm't, Inc. v. Taft*, 951 F.2d 710, 716 (6th Cir. 1991) ("An Ohio liquor licensee holds a substantial and valuable interest and has a claim to its continuation under state law. Accordingly, we hold that a holder of an Ohio liquor license has a property interest protected under the Due Process Clause."). Defendants argue that Ohio state courts do not consider a liquor license something in which a person has a vested property interest. *See Salem v. Liquor Control Comm'n* (1973), 34 Ohio St. 2d 244, 245, 298 N.E.2d 138, 140; *Solomon v. Liquor Control Comm'n* (1965), 4 Ohio St. 2d 31, 36–37, 212 N.E.2d 595, 600; *State ex rel. Zugravu v. O'Brien* (1935), 130 Ohio St. 23, 26–27, 196 N.E. 664, 666. Defendants have also cited Sixth Circuit precedent holding the same. *BPNC, Inc. v. Taft*, 147 F. App'x 525, 530 (6th Cir. 2005) ("Liquor permits are not contracts and create no vested rights; they are merely temporary permits that are subject to revocation by the power authorizing their existence."). At the same time, however, *Brookpark* remains good law for the proposition on which Gadd relies. *See Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 n.4 (6th Cir. 2008) (citing *Brookpark* for the proposition that holders of liquor licenses as having a property interest in the license); *George-Khouri Family Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677, at *5 (6th Cir. May 26, 2005) (same); *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997) (same). Case law is far from clear on whether a liquor license is a

17

(4:13cv1686)

cognizable property interest under Ohio law.

The Court does not need to reach the issue of whether Gadd had a property interest in her liquor license, however, because Defendants afforded Gadd with adequate pre-deprivation procedural rights. "[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state law]." *Loudermill*, 470 U.S. at 541. "Rather, the Constitution defines what procedures are sufficient to satisfy due process." *Chandler*, 296 F. App'x at 470 (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). The Supreme Court has held that due process is satisfied when a deprivation of a property interest is "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

Gadd's only contentions are that she did not receive notice of the August 13, 2012 Special Meeting during which the Council voted to object to her license, and that she was not afforded "the opportunity to be heard on the matter." ECF No. 1 ¶ 84. Gadd's own testimony contradicts these assertions. Defendant Dean told Gadd, through a mutual acquaintance, that Gadd should attend the Special Meeting. ECF No. 35 at 82. Moreover, Gadd has not contradicted Defendants' assertion that the public was properly given notice of the August 13th Special Meeting. ECF No. 26-4 at 1. Gadd testified that she was not afforded an opportunity to speak, although she admits that she arrived late to the Special Meeting. ECF No. 35 at 91. Had

18

(4:13cv1686)

she arrived earlier, Gadd would have been able to sign up for the opportunity to speak during the Special Meeting.  ECF No. 33 at 34.  It cannot be said that Defendants deprived Gadd of the opportunity to be heard merely because she did not avail herself of the opportunity.  *Cf. Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 989 (6th Cir. 2011) ("[T]he Dubucs did not avail themselves of these opportunities, and they should not be able to now use their inaction against the defendants in claiming a violation of due process.").  By all accounts, Defendants afforded Gadd with adequate procedural protections before Gadd was deprived of her liquor license.

As important, Gadd did not lose her liquor license as a result of the Special Meeting. Defendants state that the only authority they had with respect to Gadd's liquor license was the ability to file an objection to the Division of Liquor Control.  *See* R.C. § 4303.271(B) ("The legislative authority of the municipal corporation, the board of township trustees, or the board of county commissioners of the county in which a permit premises is located may object to the renewal of a [liquor license] for any of the reasons contained in . . . the Revised Code."). Plaintiff cannot unmoor this unambiguous statutory language from her allegations.  Instead, the Division of Liquor Control is empowered by Ohio law to decline to renew a person's liquor license.  *See* R.C. §§ 4301.10(A)(2) ; 4303.292.  The Division of Liquor Control conducted a hearing prior to declining to renew Gadd's liquor license.  Gadd attended the hearing, and she had the opportunity to testify and present other witnesses in support of renewing her license. ECF No. 35 at 101.  Gadd has not alleged that the Division of Liquor Control deprived her of due process.  Gadd also availed herself of two separate appeals following the Division of Liquor Control's decision.  It is undisputed that Gadd appealed the decision to the Liquor Control

(4:13cv1686)

Commission and to the Franklin County Court of Appeals.  ECF Nos. 26-8; 26-10.  Gadd,

therefore, received adequate procedural safeguards before she was deprived of the property

interest that she held in her liquor license.

Gadd has failed to show that Defendants deprived her of due process when the Council

voted to object to the renewal of her liquor license.  Consequently, Gadd has failed to carry her

burden of establishing that Colbert, Dean, and Flask are not entitled to qualified immunity.

Moreover, Gadd's *Monell* claim against the City of Warren fails because Gadd has failed to

establish that an employee of the City of Warren violated her constitutional rights.  Accordingly,

the Court grants summary judgment for Defendants as to Gadd's procedural due process claim.

**D.  Gadd's State Law Claims**

Defendants argue that summary judgment should be granted in their favor on all of

Gadd's state law claims because they are entitled to immunity under the applicable political-

subdivision-tort-immunity statute.  R.C. §§ 2744.02–.03.  As an alternative basis for granting

summary judgment, Defendants argue that Gadd cannot establish the *prima facie* case for any of

her state law claims.  For the reasons discussed below, the Court grants summary judgment for

Defendants on each of Gadd's state law claims.

As a general rule, political subdivisions are not liable for damages caused by their

governmental or proprietary functions.  *See Greene Cty. Agricultural Soc. v. Liming* (2000), 89

Ohio St.3d 551, 556–557, 733 N.E.2d 1141 (citing R.C. § 2744.02(A)(1)).  A political

subdivision is not immune if its employee's actions fall into one of the following five exceptions

contained in R.C. § 2744.02(B): (1) negligent operation of a motor vehicle by an employee, (2)

20

(4:13cv1686)

negligent performance of a proprietary function by an employee, (3) negligent failure to keep

public roads in repair and other negligent failure to remove obstructions from public roads, (4)

injury/loss caused by employee negligence on the grounds of buildings used in connection with a

governmental function due to physical defects on the grounds, and (5) civil liability expressly

imposed upon a political subdivision by a section of the Ohio Revised Code.  Gadd has alleged

that Defendants Colbert, Dean, and Flask have committed various intentional torts, none of

which fall within any of the enumerated exceptions of R.C. § 2744.02(B).  Gadd does not argue

that any of the exceptions apply.  Accordingly, the Court grants the City of Warren summary

judgment as to Gadd's state law claims.

Defendants Dean, Colbert, and Flask likewise argue they are entitled to political

subdivision employee immunity.  "R.C. § 2744.03(A)(6) provides an employee of a political

subdivision with immunity from tort liability, with three exceptions."  *Hauser v. Dayton Police

Dep't* (2014), 140 Ohio St. 3d 268, 270, 17 N.E.3d 554, 556, *reconsideration denied*, 140 Ohio

St. 3d 1468.  Employees of a political subdivision are not entitled to immunity if (1) their acts or

omissions were manifestly outside the scope of their employment or official responsibilities, (2)

their acts or omissions were committed with malicious purpose, in bad faith, or in a wanton or

reckless manner, or (3) liability is expressly imposed upon them by a provision of the Revised

Code.  R.C. § 2744.03(A)(6).  Gadd has not suggested that the conduct of the individual

defendants is beyond their official capacities as councilmen.  *See* R.C. § 4303.271(B) ("The

legislative authority of the municipal corporation, the board of township trustees, or the board of

county commissioners of the county in which a permit premises is located may object to the

(4:13cv1686)

renewal of a [liquor license] for any of the reasons contained in . . . the Revised Code.").

Moreover, Gadd has not suggested, and the Court does not independently find, that the Revised

Code has imposed liability.  If liability is to attach, then, it must because the conduct of Dean,

Colbert, and Flask was committed with "malicious purpose, in bad faith, or in a wanton or

reckless manner."  R.C. § 2744.03(A)(6)(b).

Malice is "the willful and intentional design to harm another by inflicting serious injury

without excuse or justification."  *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp. 2d 610, 632 (N.D.

Ohio 2010) (citing *Garrison v. Bobbitt* (1999), 134 Ohio App. 3d 373, 384, 731 N.E.2d 216,

224).  Bad faith encompasses "a dishonest purpose, moral obliquity, conscious wrongdoing,

breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.

It also embraces actual intent to mislead or deceive another."  *Hoskins v. Aetna Life Ins. Co.*

(1983), 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1320.  "Wanton misconduct is the failure to

exercise any care toward those to whom a duty of care is owed in circumstances in which there is

great probability that harm will result."  *Anderson v. Massillon* (2012), 134 Ohio St. 3d 380, 380,

983 N.E.2d 266, 267, *reconsideration denied*, 133 Ohio St. 3d 1511.  "Reckless conduct is

characterized by the conscious disregard of or indifference to a known or obvious risk of harm to

another that is unreasonable under the circumstances and is substantially greater than negligent

conduct."  *Id.*

Gadd cannot establish that any of the individual defendants acted with "malicious

purpose, in bad faith, or in a wanton or reckless manner."  Gadd's lone allegation of malicious

purpose or bad faith pertains to alleged statements made by Colbert at the Panera meeting.

22

(4:13cv1686)

These comments alone do not satisfy the high bar Ohio law establishes for malicious purpose or bad faith. *Cf. Curry v. Blanchester, 12th Dist. Nos. CA2009-08-010 and 08-012, 2010-Ohio-3368, ¶ 38* (holding that commenting that Plaintiff's "[breasts] were hanging out and she was wearing short shorts," while derogatory and crude, did not satisfy the high bar for removing immunity due to malice, bad faith, or wonton or reckless misconduct). Also, Gadd has not alleged any misconduct on the part of Defendants Dean or Flask. Gadd has failed to produce sufficient evidence that would allow the Court to conclude that any of the defendants acted with malicious purpose or in bad faith. Colbert, Dean, and Flask are therefore entitled to the general grant immunity under R.C. § 2744.03(A)(6).

As an alternative basis for granting summary judgment, the Court concludes that Gadd cannot establish the *prima facie* case for any of her state law claims. Each cause of action—violation of sunshine laws, tortious interference with contract and business relationship, defamation, intentional and negligent infliction of emotional distress, civil conspiracy, and slander of title—is missing an essential element.

"Ohio's 'Sunshine Law,' R.C. 121.22, requires that public officials, when meeting to consider official business, conduct those meetings in public." *State ex rel. Cincinnati Post v. Cincinnati (1996), 76 Ohio St. 3d 540, 542, 668 N.E.2d 903, 905.* Gadd speculates that the council adopted the resolution to object to Gadd's liquor license in advance of the special meeting. ECF No. 36 at 18. Gadd concedes that she has no evidence proving that Council conducted a meeting before the Special Meeting, however. ECF No. 36 at 18. "Such conjecture neither constitutes evidence that would be probative at trial nor evidence that would be

23

(4:13cv1686)

admissible to resolve the parties' differing versions of the dispute at trial." *Huber v. Auglaize Cnty. Bd. of Elections*, No. 3:06 CV 1968, 2009 WL 367526, at *6 (N.D. Ohio Feb. 11, 2009). The only evidence before the Court reveals that, pursuant to R.C. § 121.22(F), the media was provided with notice of the Special Meeting more than twenty-four hours before it was to be held. ECF No. 26-4 at 1. Council adopted the resolution objecting to Gadd's liquor license at an open meeting on August 13, 2012, in compliance with R.C. § 121.22(H). ECF No. 26-4 at 4. Defendants did not violate Ohio's Sunshine laws.

A plaintiff must show the following in order to recover under a claim for tortious interference with a business relationship: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Wolf v. McCullough–Hyde Mem. Hosp., Inc. (1990), 67 Ohio App.3d 349, 355, 586 N.E.2d 1204, 1208*. Assuming for purposes of summary judgment that Gadd had a business relationship with the unidentified buyer, she cannot show that the defendants intentionally caused the termination of the relationship. Gadd herself testified that it was the shooting's negative publicity, not any conduct of the defendants, that caused the unidentified buyer to lose interest in purchasing Gadd's Olympic Inn. ECF No. 35 at 38, 109. Moreover, Gadd admits that she cannot recall that Colbert had said anything about her bar and the shooting that was untrue or may have interfered with the sale beyond the negative attention the shooting caused. ECF No. 35 at 112–13. Therefore, to the extent that Gadd had a business relationship with this unidentified buyer, she cannot identify any conduct of Defendants which caused the buyer to change his mind.

24

(4:13cv1686)

Gadd must prove the following elements in order to establish her defamation claim: "(1) the defendant made a false statement, (2) that false statement was defamatory in the sense that it reflected unfavorably on the plaintiff's character or injured his trade or business, (3) the statement was published or communicated, and (4) the defendant acted with the necessary degree of fault." *Fuchs v. Scripps Howard Broad. Co.* (2006), 170 Ohio App. 3d 679, 691, 868 N.E.2d 1024, 1034. Truth is an absolute defense to a claim of defamation. *Shifflet v. Thomson Newspapers (Ohio), Inc.* (1982), 69 Ohio St. 2d 179, 183, 431 N.E.2d 1014, 1017 (citing R.C. § 2739.02). Gadd conceded during her deposition that any comment that Colbert had made to the media concerning the shooting was true. ECF No. 35 at 113. Gadd has not presented any evidence of false statements having been made by any of the defendants. Without a false statement to form the basis of her cause of action, Gadd's defamation claim must fail.

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove the following:

> (1) [t]he defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and (4) the plaintiff suffered serious mental anguish of the nature no reasonable [person] could be expected to endure.

*Finley v. First Realty Prop. Mgt., Ltd.* (2009), 185 Ohio App. 3d 366, 382, 924 N.E.2d 378, 390 (quoting *Shetterly v. WHR Health Sys.*, 9th Dist. No. 08CA0026–M, 2009-Ohio-673, 2009 WL 370829, at ¶ 15). "Severe and emotional distress" is an emotional injury that is "both severe and debilitating." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 72, 451 N.E.2d 759, 761 (1983) (syllabus). It

(4:13cv1686)

must be so severe that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.*  Extreme and outrageous conduct is that which goes beyond all bounds of decency, and is regarded as atrocious and intolerable in a civilized community.  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.* (1983), 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (quoting Restatement (Second) of Torts § 73 (1965)), *abrogated on other grounds*, *Welling v. Weinfeld* (2007), 113 Ohio St. 3d 464, 866 N.E.2d 1051.

Gadd cannot show she was suffered severe and emotional distress as a result of being subjected to extreme and outrageous conduct.  During her deposition, Gadd testified that she was embarrassed by media attention her bar received in the wake of the August 4th shooting.  ECF No. 35 at 121.  Gadd testified that she is depressed, but she admits that she has not sought medical attention for her depression.  ECF No. 35 at 122.  Gadd also concedes that she has not been physically impacted by her depression.  ECF No. 35 at 122.  Gadd testified that she did not want to go out in public over the media attention surrounding the shooting.  When asked to describe the harassment she had received, Gadd stated "strangers would come up and say, I read about you in the papers."  ECF No. 35 at 124.  These allegations fall far below the standard for extreme and outrageous conduct.

"Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril." *Heiner v. Moretuzzo* (1995), 73 Ohio St. 3d 80, 652 N.E.2d 664 (syllabus).  Gadd has not suggested that any of the defendants have placed her in physical harm.  On these facts, Gadd cannot establish a

26

(4:13cv1686)

claim of negligent infliction of emotional distress.

To prove slander of title in Ohio, a plaintiff must show that the defendant (1) made a defamatory statement against the property of another, (2) which was false and malicious, and (3) caused actual or special damages. *Specialty Minerals, Inc. v. Dunbar Mech., Inc.*, 164 F. App'x 539, 542 (6th Cir. 2005) (citing *Green v. Lemarr*, 139 Ohio App.3d 414, 430–31, 744 N.E.2d 212, 224). As discussed above, Gadd cannot identify any false statements made by Defendants that relate to her bar. Gadd admitted that Colbert's comments to the media about the August 4 shooting were true statements. ECF No. 35 at 113. Gadd cannot prevail on her slander of title claim without identifying a false and malicious statement.

Ohio defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (quoting *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St. 3d 121, 126, 512 N.E.2d 640, 645). A plaintiff must also show that the co-conspirators engaged in an underlying unlawful act in order to establish a claim for civil conspiracy. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St. 3d 464, 475, 700 N.E.2d 859, 868; *Gosden v. Louis* (1996), 116 Ohio App. 3d 195, 219, 687 N.E.2d 481, 496; *Minarik v. Nagy* (1963), 8 Ohio App. 2d 194, 195, 193 N.E.2d 280, 280–81. Malice sufficient to establish liability for civil conspiracy is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 166 N.E.2d 227, 229; *Gosden*, 116 Ohio App. at 219, 687 N.E.2d at 496. Gadd cannot show, as a matter of

27

(4:13cv1686)

law, that any of the defendants in this case acted with malice.  The decision to object to the renewal of the Olympic Inn's liquor license was a lawful exercise of the council's legislative authority to do so pursuant to R.C. § 4303.271(B).  Moreover, even if the Court assumed that Colbert's comments at Panera constituted malice, Gadd has not presented evidence of a second person with whom Colbert conspired to deprive Gadd of her liquor license.  Finally, the Court has concluded that each of Gadd's claims against Defendants lack merit.  Therefore, she is unable to identify the underlying unlawful act which was the object of the alleged conspiracy.

The Court concludes that Defendants are entitled to immunity pursuant to R.C. §§ 2744.02–.03.  Moreover, Gadd has failed to establish the *prima facie* case for any of her state law claims.  Accordingly, the Court grants summary judgment for Defendants as to each of Gadd's state law claims.

### IV.  Conclusion

For the foregoing reasons, the Court hereby grants Defendants' Motion for Summary Judgment.


IT IS SO ORDERED.


 December 31, 2014                          /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States District Judge

28